## Case No. 9,698.

MOKE et al. v. BARNEY.

[5 Blatchf. 274; [2] 2 Int. Rev. Rec. 157.]

Circuit Court, S. D. New York. Oct. 27, 1865.

CUSTOMS DUTIES—ACTION TO RECOVER BACK — PROTEST—UNASCERTAINED AND ESTIMATED DUTIES—FINAL LIQUIDATION.

1. The act of February 26th, 1845 (5 Stat. 727,) requiring a written protest against the payment of duties, in order to sustain an action against the collector, to recover them back, applies to the payment of unascertained and estimated duties, which are to be afterwards liquidated, and the protest may be made at the time of the final liquidation.

2. The fact that the collector exacts duties in violation of instructions, does not supply the want of a protest.

[1] [Reported by Hon. Thomas Bee, District Judge.]

[2] [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]

This was an action against [Hiram Barney] the collector of the port of New York, to recover back an alleged excess of duties paid by the plaintiffs [George Moke and others], but not under protest, on the importation of certain merchandise which was subject to duty by weight, under the act of March 2d, 1861 (12 Stat. 178). At the time of the entry, the duties were estimated on a given number of pounds, as shown by the entry, and the amount thus estimated was paid and a permit granted to land the goods, with the usual directions to the government weigher to weigh the selected packages. The goods were weighed and reported with the customary allowance for tare, but no allowance for draft. This occurred at the final liquidation of the duties, and after the secretary of the treasury had issued his circular of March 21st, 1861, instructing the officers of customs that allowances on account of tare and draft would be governed by the 58th and 59th sections of the act of March 2d, 1799 (1 Stat. 671, 672).

George T. Curtis, for plaintiffs.

E. Delafield Smith, Dist. Atty., and Mr. Lowrey, for defendant.

NELSON, Circuit Justice. The only question presented in the case is—are the plaintiffs entitled to recover the excess of duties, not having protested at or before the final liquidation of them? This court has decided (Napier v. Barney [Case No. 10,009]) that, under the 58th and 59th sections of the act of March 2d, 1799, the merchant is entitled to allowances or deductions for both tare and draft, on articles the duties on which are to be ascertained by weight.

The act of February 26th, 1845 (5 Stat. 727), which revived the right of action against the collector to recover back an excess of duties paid, which right had been taken away by the 2d section of the act of March 3d, 1839 (5 Stat. 348) as interpreted by the supreme court, in Cary v. Curtis, 3 How. [44 U. S.] 236, contains this provision: "nor shall any action be maintained against any collector, to recover the amount of duties so paid under protest, unless the said protest was made in writing, and signed by the claimant, at or before the payment of said duties, setting forth distinctly and specifically the grounds of objection to the payment thereof." A previous clause in the section had declared, that nothing in the act of 1839 should take away, or be construed to take away, or impair, the right of any person, who had paid, or should thereafter pay, money, as and for duties, under protest, in order to obtain his goods, to maintain an action against the collector to recover back duties not authorised or payable by law. The construction that has been uniformly given to this act of 1845, since it became a law, is, that to entitle the merchant to a suit against the collector to recover back duties illegally exacted,

there must not only be a protest made against the payment at or before the payment, but it must be in writing, and in the form, substantially, that is prescribed by the statute. The question before us is, whether or not the facts stated and agreed upon in this case take it out of this construction of the act of 1845, no protest in writing having been made.

One ground taken by the learned counsel for the plaintiffs, to exempt this case from the protest required by the act, is, that the act does not apply to the case of the payment to the collector of "unascertained duties," which are payments in gross, on an estimate as to amount, and where the merchant, on a final liquidation, will be entitled by law to allowances or deductions, which do not depend on the rate of duty charged, but on the ascertainment of the quantity of the article subject to duty; that, in this class of payments, no question of law is, in general, supposed to arise between the merchant and the government; that the other class of payments, "for duties paid under protest against the rate or amount of duties charged," comprehends payments where the merchant claims that the rate has been illegally levied; and that, in this class, a protest is required, in order to give notice of the illegality of the assessment. This distinction is supposed to have been recognized and acted on by the court in the case of Cary v. Curtis, 3 How. [44 U. S.] 236, in expounding the act of 1839, and to have been carried into the statute of 1845. I cannot yield assent to this view. On the contrary, the payment of "unascertained duties" by the merchant, in order to obtain the permit to land his goods, is made without reference to the nature or character of the questions that may arise before the appraisers, measurers, or weighers, or the collector, and affords time to those officers to ascertain the quality, quantity, weight, or measure, and also the rate or amount of duty to be paid, while, at the same time, the merchant acquires possession of the bulk of his shipment and entry, and may deal with the goods as his own. This payment is but preliminary and indefinite, a sum in gross and by estimate, intended to be large enough to cover the actual legal amount of duty, when ascertained. The ascertainment of the duty is subsequently made, in conformity with the report of the proper custom-house officers, the money in hand is applied, and any balance found, on liquidation, over and above the legal duties, is refunded to the merchant. When this practice was first introduced at the customs, there was some embarrassment as to the time when the protest should be made, and more especially since the act of 1845, requiring it to be made in writing; but it was finally agreed, and such has been the practice since, that if the protest was made at the time of the final liquidation and refunding of the balance, it was in time.

The reference to the two classes of duties, in the act of 1839, to wit, the payment of

"unascertained duties," and of duties paid under protest, and the direction that they should be placed to the credit of the treasurer of the United States, and kept and disposed of as other moneys paid for duties, and the enactment itself, grew out of large and repeated defalcations by collectors, which it was difficult, if not impossible, for the government to prevent, on account of the conditions of these funds. The payment of "unascertained duties" had the effect to keep, at all times, large masses of money in the hands of the collectors, of which no return was made to the secretary of the treasury till the final liquidation of the duties. Many hundreds of thousands of dollars of this fund were constantly in the possession of the collector, and were sometimes used by him for his own private purposes. In the other class, duties paid under protest, the collector claimed the right to detain them while in litigation, as he was personally responsible for the amount, if ultimately decided to be illegally exacted, and this afforded him an opportunity to use them in the meantime. This act of 1839 struck at the root of the evil, by requiring the collector to pay the moneys into the treasury, the same as in the case of all other duties. The great design of the act was to prevent these frauds and defalcations, and it effectually accomplished it. Under the decision of the court in Cary v. Curtis [supra], the collector was no more liable to suit for "unascertained duties" paid over to the treasury, than in the case of duties paid under protest. Both stood upon the same footing, and were governed by the same principle.

The other ground urged by the learned counsel, to take the case out of the act of 1845, is, that the excess of duties paid to the collector by reason of the refusal to make the proper abatement for draft, was in direct violation of the instructions of the secretary of the treasury. This ground is plausible, and would seem not destitute of principle, because the payment is an exaction in violation of the duty of the officer, who was bound to obey his superior. But the answer is, that there is no such exception in the act of 1845, and, also, that the provision is positive and explicit—"nor shall any action be maintained against any collector, to recover the amount of duties so paid under protest, unless the said protest was made in writing, &c., setting forth distinctly and specifically the grounds of objection, &c." The instructions of the secretary would have been good ground of protest against the payment of the duty. The omission must be attributed to the neglect of the merchant rather than to the law. I am satisfied, therefore, that there is no well-grounded distinction in the act of 1839, or in the judgment of the court in Cary v. Curtis, or in the act of 1845, as it respects the necessity of a written protest under the latter act, between the payment of "unascertained duties" and of duties paid under protest; that a protest must be made, in both cases,

in order to give a right of action against the collector; that such has been the established construction of the act of 1845, and the practice under it, in this court, since it went into operation.

Actions have been maintained against the collector without protest, but they were cases not falling within the act, such as the case of Ogden v. Maxwell [Case No. 10,458], to recover back fees illegally exacted for constructive permits to land passengers, and the case of Hunt v. Schell [unreported], to recover back money paid by mistake, for duties which had already been paid. The act of 1845 applies to the payment of duties, and not to fees or money paid by mistake. Judgment must be rendered for the defendant.